**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                                     :
                                                 :
        Plaintiff,                           :   Civil Action No. 23-cv-8594
                                                 :
v.                                               :   **COMPLAINT FOR VIOLATIONS OF**
                                                 :   **SECTIONS 14(a) AND 20(a) OF THE**
CRESTWOOD EQUITY PARTNERS LP,                    :   **SECURITIES EXCHANGE ACT OF**
ROBERT G. PHILLIPS, WARREN H.                    :   **1934**
GFELLER, JANEEN S. JUDAH, DAVID                  :
LUMPKINS, ANGELA A. MINAS, GARY                  :   **JURY TRIAL DEMANDED**
D. REAVES, JOHN J. SHERMAN,                      :
FRANCES M. VALLEJO, CLAY C.                      :
WILLIAMS,                                        :
                                                 :
        Defendants.                          :
---------------------------------------------------------

       Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

       1.    This is an action brought by Plaintiff against Crestwood Equity Partners LP

("Crestwood or the "Company") the members Crestwood's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants"), for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Crestwood and Energy Transfer LP and

affiliates ("Energy Transfer").

       2.    Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on September 15, 2023 with the United States Securities and Exchange Commission ("SEC"), and as amended on September 27, 2023, and disseminated to Company unitholders.  The Registration Statement recommends that Company unitholders vote in favor of a proposed transaction whereby Crestwood will merge with and into Pachyderm Merger Sub LLC, a wholly owned subsidiary of Energy Transfer ("Merger Sub"), with Merger Sub surviving as a direct wholly owned subsidiary of Energy Transfer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 16, 2023 (the "Merger Agreement"), each Crestwood unitholder will receive the right to receive 2.07 units, representing a limited partner interest in Energy Transfer (the "Merger Consideration").

3.    As discussed below, Defendants have asked Crestwood's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in support of its fairness opinion.

4.    It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Crestwood's unitholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Crestwood units and has held such units since prior to the wrongs complained of herein.

10.     Individual Defendant Robert G. Phillips has served as a member of the Board since October 2010 and is the Chairman of the Board and the Founder and Chief Executive Officer of the Company.

11.     Individual Defendant Warren H. Gfeller has served as a member of the Board since July 2001.

12.     Individual Defendant Janeen S. Judah has served as a member of the Board since November 2018.

3

13.     Individual Defendant David Lumpkins has served as a member of the Board since November 2015.

14.     Individual Defendant Angela A. Minas has served as a member of the Board since January 2022.

15.     Individual Defendant Gary D. Reaves has served as a member of the Board since September 2022.

16.     Individual Defendant John J. Sherman has served as a member of the Board since July 2001.

17.     Individual Defendant Frances M. Vallejo has served as a member of the Board since February 2021.

18.     Individual Defendant Clay C. Williams has served as a member of the Board since January 2022.

19.     Defendant Crestwood is a Delaware limited partnership and maintains its principal offices at 811 Main Street, Suite 3400, Houston, Texas 77002.  The Company's units trade on the New York Stock Exchange under the symbol "CEQP."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Crestwood develops, acquires, owns, controls, and operates assets and operations in the energy midstream sector in the United States. The Company operates through three segments: Gathering and Processing North; Gathering and Processing South; and Storage and

Logistics. The Gathering and Processing North segment offers natural gas, crude oil, and produced water gathering, compression, treating, processing, and disposal services to producers in the Williston Basin and Powder River Basin. This segment owns and operates natural gas facilities with approximately 818 MMcf/d of gathering capacity and 775 MMcf/d of processing capacity; crude oil facilities with approximately 250 MBbls/d of gathering capacity and 496,000 Bbls of storage capacity; and produced water facilities with approximately 421 MBbls/d of gathering and disposal capacity. The Gathering and Processing South segment provides natural gas gathering, compression, treating, and processing; and produced water gathering and disposal services to producers in the Delaware basins. This segment owns and operates natural gas facilities with 1.1 Bcf/d of gathering capacity and 613 MMcf/d of processing capacity; crude oil facilities with approximately 90 MBbls/d of gathering capacity; and produced water facilities with approximately 354 MBbls/d of gathering and disposal capacity. The Storage and Logistics segment offers natural gas liquids, crude oil, and natural gas storage, terminal, marketing, and transportation, including rail, truck and pipeline services to producers, refiners, marketers, utilities, and other customers. Crestwood Equity GP LLC serves as the general partner of Crestwood Equity Partners LP. The company was formerly known as Inergy L.P. and changed its name to Crestwood Equity Partners LP in October 2013. Crestwood was incorporated in 2001 and is headquartered in Houston, Texas.

23.    On August 16, 2023, the Company and Energy Transfer jointly announced the Proposed Transaction:

> DALLAS & HOUSTON--(BUSINESS WIRE)--Aug. 16, 2023- - Energy Transfer LP (NYSE: ET) ("Energy Transfer") and Crestwood Equity Partners LP (NYSE: CEQP) ("Crestwood") announced today that the parties have entered into a definitive merger agreement pursuant to which Energy Transfer will acquire Crestwood in an all-equity transaction valued at approximately $7.1 billion, including the assumption of $3.3 billion of debt, based on the closing price on August 15, 2023.

Under the terms of the agreement, Crestwood common unitholders will receive 2.07 Energy Transfer common units for each Crestwood common unit. The transaction is expected to close in the fourth quarter of 2023, subject to the approval of Crestwood's unitholders, regulatory approvals, and other customary closing conditions. Upon closing, Crestwood common unitholders are expected to own approximately 6.5% of Energy Transfer's outstanding common units.

**Complementary Assets**

Crestwood's system includes gathering and processing assets located in the Williston, Delaware and Powder River basins, including approximately 2.0 billion cubic feet per day of gas gathering capacity, 1.4 billion cubic feet per day of gas processing capacity and 340 thousand barrels per day of crude gathering capacity. If consummated, this transaction would extend Energy Transfer's position in the value chain deeper into the Williston and Delaware basins while also providing entry into the Powder River basin. These assets are expected to complement Energy Transfer's downstream fractionation capacity at Mont Belvieu, as well as its hydrocarbon export capabilities from both its Nederland Terminal in Texas and the Marcus Hook Terminal in Philadelphia, Pennsylvania.

This transaction is also expected to provide benefits to Energy Transfer's NGL & Refined Products and Crude Oil businesses with the addition of strategically located storage and terminal assets, including approximately 10 million barrels of storage capacity, as well as trucking and rail terminals. These systems are anchored by predominantly investment-grade producer customers with firm, long-term contracts, and significant acreage dedications.

**Positive Financial Impact**

The transaction is expected to be immediately accretive to distributable cash flow per unit as well as neutral to Energy Transfer's leverage metrics upon closing. Similar to Energy Transfer, Crestwood's cash flows are supported by primarily fee-based revenues from long-term contracts with investment-grade counterparties. In addition, with the increased scale and strengthened balance sheet, Energy Transfer expects to be able to improve on the current cost of financing for the acquired debt securities. Structured as a 100% unit-for-unit exchange, the transaction is tax-efficient to Crestwood unitholders and is

anticipated to position both partnerships for long-term value upside through the combination.

Energy Transfer also expects to achieve at least $40 million of annual run-rate cost synergies before additional benefits of financial and commercial opportunities.

**Compelling Value Creation for Crestwood Unitholders**

Energy Transfer's premier business model, strong balance sheet and backlog of growth opportunities supports the potential for significant additional value creation over time. The tax-efficient transaction is expected to provide Crestwood unitholders a benefit to distributions per unit and an opportunity to participate in Energy Transfer's targeted annual distribution per unit growth rate of 3-5%.

**Advisors**

BofA Securities acted as sole financial advisor to Energy Transfer and Kirkland & Ellis LLP acted as legal counsel. Intrepid Partners, LLC and Evercore acted as financial advisors to Crestwood and Vinson & Elkins LLP acted as legal counsel.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Crestwood's unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

25.     On September 27, 2023, Crestwood and Energy Transfer jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or

omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.    The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Evercore in its analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Energy Transfer which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Energy Transfer and Crestwood prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Evercore with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    For the *Crestwood Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics and accompanying line items: Adjusted EBITDA, Distributable Cash Flow, Distributable Cash Flow per Crestwood common unit, but fails to provide line items used to calculate these metrics and/or a reconciliation

of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

28.     For the *Energy Transfer Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics and accompanying line items: Adjusted EBITDA, Distributable Cash Flow, Distributable Cash Flow per Energy Transfer common unit, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

32.     Further, the Registration Statement fails to disclose any prospective financial information for Energy Transfer. This information is material since Crestwood unitholders will own units of Energy Transfer unit after the Proposed Transaction closes.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Crestwood*

33.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates of -0.5% to 0.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.5%; (iv) the weighted average cost of capital of the Company; (v) the inputs and assumptions underlying the EBITDA multiples of 8.5 to 10.0x; (vi) the Company's projected debt, preferred equity and cash as of December 31, 2023; and (vii) the projected number of fully-diluted Crestwood common units as of December 31, 2023.

34.     With respect to Evercore's *Discounted Distributions Analysis*, the Registration Statement fails to disclose: (i) the terminal values for the company; (ii) the inputs and assumptions underlying the cost of equity discount rates ranging from 10.0% to 11.0%; (iii) the inputs and assumptions underlying the terminal yield range of 8.5% to 11.5%.

35.     With respect to Evercore's *Peer Group Trading Analysis*, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each peer group company

selected by Evercore for the analysis; and (ii) the inputs and assumption underlying the reference range of 8.5x – 10.00x.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Energy Transfer*

36.    With respect to Evercore's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for Energy Transfer; (ii) the inputs and assumptions underlying the perpetuity growth rates of -0.5% to 0.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0%; (iv) the weighted average cost of capital of Energy Transfer; (v) the inputs and assumptions underlying the EBITDA multiples of 9.0 to 11.0x; (vi) Energy Transfer's projected debt, preferred equity and cash as of December 31, 2023; and (vii) the projected number of fully-diluted Energy Transfer common units as of December 31, 2023.

37.    With respect to Evercore's *Discounted Distributions Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the cost of equity discount rates ranging from 9.0% to 10.0%; (iii) the inputs and assumptions underlying the terminal yield range of 7.0% to 10.0%.

38.    With respect to Evercore's *Peer Group Trading Analysis*, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each peer group company selected by Evercore for the analysis; and (ii) the inputs and assumption underlying the reference range of 9.0x – 11.0x.

39.    In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Crestwood within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Crestwood, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Crestwood, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Crestwood, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

50.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 29, 2023                 **MELWANI & CHAN LLP**

                       By:    */s/ Gloria Kui Melwani*

                            Gloria Kui Melwani (GM5661)
                            1180 Avenue of the Americas, 8th Fl.
                            New York, NY 10036
                            Telephone: (212) 382-4620
                            Email: gloria@melwanichan.com

                            *Attorneys for Plaintiff*